# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## WOOD TOWING CORPORATION v. WILLIAM WEST.

January 18, 1943.

Record No. 2575.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*John W. Oast, Jr.*, for the plaintiff in error.

*Sydney H. Kelsey*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This is an action at law against the Wood Towing Corporation to recover damages for personal injuries suffered by William West, the plaintiff, in the course of his employment on a tug owned by the defendant, as a result of the

alleged negligence of the master of that vessel. To a judgment entered upon a verdict of the jury awarding the plaintiff $500, the defendant obtained this writ of error.

The action was instituted and tried under the provisions of the Merchant Marine Act of 1920 (46 U. S. C. A. section 688). That Act, in part, provides:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; * * * ."

Counsel for the parties agree that the above Act by its adoption of the Federal Employers' Liability Act (U. S. C. A. Title 45, sections 51-59) does away with the so-called fellow servant doctrine and the assumption of the risk of any negligence on the part of the master of the vessel, and makes applicable, in a proper case, the comparative negligence doctrine when the plaintiff is guilty of contributory negligence and the defendant is also negligent. *Southern Ry.* v. *Mays*, 239 F. 41; *Chesapeake, etc., Ry. Co.* v. *Winder*, 23 F. (2d) 794; *States Steamship Co.* v. *Berglann*, 41 F. (2d) 456, cert. den., 282 U. S. 868, 51 S. Ct. 75, 75 L. Ed. 767.

Upon appeal, the contention of the defendant is that the evidence does not show any negligence on the part of its agents, in that the contract of employment of the plaintiff created no special duty to warn the employee of the dangers incident to his work nor was there any custom or practice of the industry, which required a warning under the circumstances hereinafter stated.

The case was properly submitted to the jury upon every question of fact involved. In view of the jury's verdict, the evidence must be stated in the light most favorable to the plaintiff.

West, in his own behalf, testified as follows:

That on the late afternoon of May 2, 1941, while employed as a seaman on the defendant's tug, the tug was ordered to Pinner's Point in Norfolk Harbor to move barge

number 16, lying at Southern Railway Pier No. 2; that the tug made up alongside barge number 16, which was lying on the south side of the pier; and that, as it did so, he was standing in the bow of the tug at the forward bitt and was ordered by the master to put his line on the end offshore side bitt of that barge. Accordingly, when the tug "eased up alongside" barge number 16, he put a line as directed; that after he had performed this duty and while the bow of the tug was still alongside the barge, another deck hand, C. C. Ellison, came forward and got on the barge from the tug, then got on the deck whence he went to the other end of the barge and turned loose the line from the dock to the barge. Ellison then came back aboard the barge and turned facing the dock with his back to the plaintiff, who was still in the bow of the tug. West was next ordered by the master of the tug to take the line off the end offshore side bitt of the barge and place it on an adjoining bitt on the offshore side of the barge, the barge having four bitts on its offshore side, two being on either end and the other two placed on the side of the barge, so that each bitt covered a quarter space. After he had placed the end of his line on the second bitt of the barge, he received an order from the master of the tug to make his line fast on the tug. In carrying out this order and in making his turns around the bitt on the tug, and before he could finish this task, the master suddenly and without warning to the plaintiff, came ahead with the tug drawing the line taut, thereby catching the end of plaintiff's middle finger of his left-hand between the line and the bitt, mashing off the tip of his finger; that no signal whatever was given to him of the movement of the tug; that he turned around and told the master, who was in the pilot house, that his finger had been mashed while he was making the line fast because of the unexpected movement of the tug; and that the master told him he did not see it happen.

The master and Ellison each testified that they did not see how West mashed his finger or the manner by which it was mashed. Both, however, stated that Ellison had blown a

whistle after Ellison had thrown off the lines mooring the barge to the dock, indicating that the barge was free from the dock. West said he did not hear the whistle.

West was an experienced deck hand, who had been employed on tug boats for about fifteen years, and had been employed on this particular tug for thirty-two days prior to his injury.

As a result of the injury, he lost the tip end or last joint of the middle finger of his left-hand and was out of his usual employment for two months at a loss of $200 in wages.

The trial court gave several instructions to the jury in accordance with the provisions of the law involved. Included was number 3, given at the request of the defendant. That instruction became the law of the case, especially on the points involved before us, and was in the following language:

"The Court instructs the jury that the plaintiff in this case was a seaman, who in law is held to assume the obvious or known risks of his employment, which are not created or caused by any negligent act of the defendant, and if they believe from the evidence that there was no defect in the tug's bitt or line, and that the master of the tug FRANCIS was guilty of no negligence in the manner in which he moved the tug, but that the injury of the plaintiff was caused by the careless act of the plaintiff in allowing his hand to come too close to the coils of the rope of the line around the tug's bitt when the tug put a strain thereon, then they must find for the defendant."

The test of the negligence of the master is whether he did that which he ought not to have done or failed to do that which he should have done, and his act of commission or omission proximately contributed to the accident.

The evidence discloses that West was performing his task in a position where he was in plain view of the master of the tug. He was making a line fast under an order of the master. The circumstances were under the complete control of the defendant's agent. Before West could complete his task, the master suddenly and without warning caused

the tug to move ahead. The movement drew taut the line which West was fastening to the bitt, catching and mashing his finger between the line and the bitt.

Common sense, reason, and practical experience tell us that the sudden, unexpected movement of the surface upon which one stands is most likely to throw one off balance, causing him to do what he would not otherwise do. Especially is this true when both of one's hands are engaged in a task which is disassociated with any sudden, forward movement of the surface under-foot.

While a seaman assumes all the ordinary risks of his employment, he cannot control the actions or orders of the ship's officers, and he does not assume the risks of dangerous acts of those in charge of the ship, whereby his direct tasks are made dangerous and unsafe. It was the duty of the master of the ship to exercise reasonable care for the protection of a seaman on his ship. If he failed in that duty he was negligent. *States Steamship Co.* v. *Berglann, supra.*

The attempt of the defendant to prove that a warning was given the seaman that the vessel was about to move serves to show that the master recognized his duty to give such warning. Prudence and reasonable care suggest that a warning should be given as a matter of custom under similar circumstances.

The jury has found, on the weight and influence to be given the evidence, that the master failed to exercise reasonable care for the protection of the seaman and that as a proximate result the seaman suffered the injuries complained of. Their finding has been sanctioned by the trial judge. We think it is supported by the evidence and, therefore, the judgment of the trial court must be affirmed.

*Affirmed.*